**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

THE COLLECTION, LLC,
      Plaintiff,

                                        CASE NO. 13-CV-22841-
                                          GRAHAM/SIMONTON

vs.


INTREPID INSURANCE CO.,
      Defendant.
_____/

## DEFENDANT'S MOTION FOR A NEW TRIAL

The defendant, Intrepid Insurance Company, hereby moves the court in accordance with Rule 50(b) and Rule 59 of the FEDERAL RULES OF CIVIL PROCEDURE, for a new trial.  In support hereof, the defendant would show the following:

1.      It was error for the court to permit the jury, by instruction, to draw an adverse inference with respect to the non-party, witness, Scott Newcomb's, testimony.  This was error and it deprived defendant of a fair trial given the high degree of relevance of his testimony on the key issue in the case which was whether he intended to steal the subject vehicles when he issued the down-payments checks for them.

2.      This was matter was brought as a declaratory judgment action requiring an equitable decree which does not carry with it a right to a plenary jury trial.  The counterclaim for breach of contract did not change that.  It did not convert this into a non-equitable, legal case.  It did not change *any* issue, which remained as, simply, whether the claim was covered under the

subject insurance policy.  The case never should have been put to a jury.  That was fundamental error in and of itself, but it was particularly erroneous to put the general breach of contract and contract interpretation issues to the jury on the instructions that were given.

3.     These errors independently, but especially in combination, deprived the defendant of a fair trial.

## INCORPORATED MEMORANDUM OF LAW

In support of its motion for new trial, and in accordance with the Rule 7.1(a)(1) of the LOCAL RULES OF THE SOUTHERN DISTRICT OF FLORIDA, the defendant submits this memorandum of law.

### THE JURY SHOULD NOT HAVE BEEN ALLOWED TO DRAW A NEGATIVE INFERENCE BASED UPON NON-PARTY WITNESS, SCOTT NEWCOMB'S, INVOCATION OF HIS FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION

The jury should not, as a matter of law, been allowed to draw a negative inference based upon the non-party witness Scott Newcomb's invocation of his Fifth Amendment Right Against Self-Incrimination during his *de benne esse* deposition.  Defendant, Intrepid, had no control over whether Newcomb would invoke the Fifth Amendment, and it was overwhelmingly prejudicial against defendant since the primary coverage issue revolved around his intent at the time he issued down-payment checks so as to obtain possession of the subject vehicles.

As an initial matter, Mr. Newcomb *improperly* invoked the Fifth Amendment right against self-incrimination during his deposition because, first-and-foremost, it was clearly waived.  During the deposition Mr. Newcomb stated as follows:

> Q.     Did you ever intentionally intend to commit any type of crime against the Collection?
> A.     I have never intentionally tried to take anything from anybody. You know, they were friends. Mike was a friend of mine,

> you know. We did business for a long time. It hurt me worse than
> it hurt them. And I have never intentionally taken anything from
> anybody.

*See* Transcript of Mr. Newcomb's October 9, 2014 deposition, p.43, Lines 15-22.

Mr. Newcomb candidly stated that it was never his intention to commit a crime – upon anyone. That alone answers the coverage issue in a manner that is in accordance with Intrepid's coverage position in this case since the policy requires criminal intent to steal the vehicles from The Collection. Of course, the attorney for The Collection would then have the right to ask reasonable follow-up questions on the matter. Mr. Newcomb's general exculpatory statement in response to the above general question constitutes a waiver of his Fifth Amendment right against self-incrimination with respect to any reasonable follow-up questions on that matter. *See In Re Cotillion Invs., Inc.*, 343 B.R. 344, 2006 Bankr. LEXIS 974 (S.D. Fla. Bank. Ct. 2006). Accordingly, Newcomb improperly asserted his Fifth Amendment right against self-incrimination in refusing to answer follow-up questions. Once Madow testified on these subjects, he waived the right to assert the privilege as to the details. *See, e.g., In re Cotillion Invs., Inc.*, 343 B.R. 344, 354, 2006 Bankr. LEXIS 974, 21, 46 (Bankr. S.D. Fla. 2006); *United States. v. Gwinn*, 2003 U.S. Dist. LEXIS 16090, 2003 WL 23357667 (M.D. Fla. 2003); *Mitchell v. United States*, 526 U.S. 314, 119 S. Ct. 1307, 143 L. Ed. 2d 424 (1999).[1] Accordingly, it was obviously improper to allow the jury to even hear the repetitive, improper invocation of the privilege by Newcomb, let alone to draw a negative inference from Mr. Newcomb's invocation of the Fifth Amendment privilege.

Even if the invocation of the privilege was proper – *i.e.*, not waived – it was error to

---

[1]   It must also be noted in this regard that Newcomb was represented by counsel of his choosing at his deposition.

permit the jury to make the adverse inference in the circumstances of this case.  In *Coquina Invs. V. TD Bank, N.A.*, 760 F. 3d 1300 (11th Cir. 2014), the Court determined that four non-exclusive factors should be considered by the court in determining whether  a jury should be permitted to draw a negative inference from a witness's assertion of the Fifth Amendment right against self-incrimination: (1) the nature of the relevant relationships of the parties; (2) the degree of control of the party over the non-party witness; (3) the compatibility of the interests of the party and non-party witness in the outcome of the litigation; and (4) the role of the non-party witness in the litigation.  *Id*. "The overarching concern that should guide the admissibility inquiry is whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth."  *Id*.

In the instant action, it is undisputed that Defendant did not at any time have any relationship whatsoever with Mr. Newcomb.  Moreover, it is undisputed that Defendant at no time exercised any degree of control over Mr. Newcomb.  In fact, Newcomb was represented by his own counsel.  In addition, as this is a dispute between Defendant Intrepid Insurance Co. and its insured, The Collection, LLC, and not Mr. Newcomb, Mr. Newcomb has no interest at all in the outcome of this litigation.  As Mr. Newcomb has no interest in the outcome of this litigation, there is no issue regarding the compatibility of the interests of Defendant and Mr. Newcomb in the outcome of this action.  Again, Defendant and Mr. Newcomb have not at any time held any common interests whatsoever.  Newcomb might have been an important witness, but his role was limited to just that -- a witness and not an interested party.  In *Kontos v. Kontos*, 968 F. Supp. 400, 1997 U.S. Dist. (S.D. Kentucky 1997), the Court determined that where, as here, there are no "allied interests" between the non-party witness invoking the Fifth Amendment right against

self-incrimination and the party against whom an inference would be drawn, a jury should not be permitted to draw any such inference at trial.

In addition, the Court *sua sponte* ordered the parties to depose Mr. Newcomb after discovery had been completed and Motions for Summary Judgment were pending. *See* Order dated and docketed on August 13, 2014. As such, the Court determined that Mr. Newcomb's deposition was warranted, and, as such, bought about Mr. Newcomb's invocation of the Fifth Amendment right against self-incrimination in responding to questions during the deposition. Again, allowing the jury to draw any inference whatsoever from Mr. Newcomb's invocation of his Fifth Amendment right against self-incrimination unfairly and irreversibly prejudiced Defendant during jury deliberations.

The cases Plaintiff may reference in support of its argument that said deposition testimony is admissible are inapplicable here. In *FDIC v. Fid. & Deposit Co. of Md.*, 45 F. 3d 969 (5th Cir. 1995), the court determined that an employee's silence may be imputed against his or her employer. *Id*. It is undisputed that Mr. Newcomb is not and has never been an employee of Defendant. In *RAD Servs., Inc. v. Aetna Casualty and Sur. Co.*, 808 F. 2d 271 (3rd Cir. 1986), the witness invoking the Fifth Amendment right against self-incrimination was a party's employee. Again, Mr. Newcomb is not and never has been Defendant's employee. In *Libutti v. United States*, 107 F. 3d 110 (2nd Cir. 1977), the Court determined that the witness seeking to invoke the Fifth Amendment right against self-incrimination "had precisely the same interest against the drawing of adverse inferences . . ." as the parties against whom the adverse inferences were sought. *Id*. Here, there is no correlation whatsoever between Mr. Newcomb's interests and Defendant's interests. Again, in this action, there is no identity of interests between Mr.

- 5 -

Newcomb's interests and Defendant's interests that make any adverse inferences drawn from Mr. Newcomb's testimony trustworthy. *Kontos, supra*. Accordingly, as a matter of law, the jury should not have been permitted to draw a negative inference based upon non-party witness Scott Newcomb's invocation of his Fifth Amendment Right Against Self-Incrimination during his *de benne esse* deposition.

### THERE WAS NO RIGHT TO A PLENARY JURY TRIAL; THE ONLY ISSUE THAT COULD HAVE BEEN PROPERY PUT TO THE JURY WAS THE INTENT OF SCOTT NEWCOMB, WITHOUT AN ADVERRSE INFERENCE CHARGE

Complicating this issue further is that the general coverage issue should not even have been tried to a jury. In a coverage case – *i.e*., an equitable action – there is no *general* right to a jury trial. "It is well-settled that the construction of an insurance policy is a question of law for the court." *Volker Stevin Construction Co. v. Seaboard Surety* Corp., 673 F.Supp. 1563 (S.D. Fla. 1987). The scope of what was put to the jury in this case was far too broad. In *Volker Stevin Construction*, the court also noted that "[f]urther, it is within the province of the trial judge – not the jury – to resolve ambiguities as a matter of law." *Id*. at 1564. Numerous cases can be cited for these propositions. *See, e.g.*, *Lawyers Title Ins. Corp. v. JDC (America) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995)(applying Florida law). In *McGuire v. Southern Homes of Palm Beach LLC*, 591 F.Supp. 1263 (S.D. Fla. 2008) the court noted that the "court must determine whether the terms of a contract are susceptible to an interpretation as a matter of law." *Id*. at 1267. This decision also noted that the "court must also determine whether, instead, the terms used are unclear . . ., in which case an issue of fact may exist as to what as to what the contract required." *Id*. The court held that

> whether a contract provision is ambiguous is a question for the court, and the court can resolve that ambiguity if the facts are

- 6 -

> undisputed. . . . If an issue of fact does exist as to the contractual
> agreement, then the trier of fact should consider parol evidence . . .
> for determining the intent of the parties at the time of contracting.
> . . .

*Id*. at 1267-68.

A trial court in an equitable declaratory judgment action can, of course, empanel an "advisory jury" to resolve factual disputes embedded within the coverage action. But, if there is no dispute as to underlying facts, and the policy is found to be unambiguous, the judge is to construe the policy with respect to those facts -- period. If there is a dispute as to the underlying facts, and the policy is not ambiguous, the judge can put resolution of that factual issue to a jury – again, this would be an advisory jury and the judge is actually actual free to disregard the finding. If there is alleged to be an ambiguity, the *judge* is to determine that such is the case, and is to *resolve it* using common law rules of construction. "If a contract is ambiguously worded, it is the responsibility of the trial court to resolve it as a matter of law." *See e.g., Epstein v. Hartford Cas. Ins. Co.,* 556 So.2d 331 (Fla. 1st DCA 1990).

Again, there are many cases that can be cited for this proposition. It is only if there is a dispute as to the parties' intent as to ambiguous terms, that the court can permit testimony – otherwise barred by the "parol evidence" rule – as to parties' intent and let the jury resolve that particular issue. The judge will then enter an equitable decree declaring coverage to exist or not in light of the jury's determination as to their intent. These are the parameters of how a jury may be used in a coverage case. As stated by the Eleventh Circuit Court of Appeals, which controls this case:

> Contract interpretation is generally a question of law. . .
> . Questions of fact only arise when ambiguous contract terms
> force the court to turn to extrinsic evidence of the parties' intent . .

. to interpret [a] disputed term. . . . This principle only applies when there exists a genuine inconsistency, uncertainty or ambiguity in meaning after resort to the ordinary rules of construction.

*Lawyers Title Ins. Corp. v. JDC (America) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995).

That is not what happened here. It must be recalled that Intrepid brought this case as an equitable coverage action. In this particular declaratory judgment action, however, because of The Collection's "counterclaim" ostensibly raising a legal claim for breach of contract, and their concomitant motion to realign the parties (with The Collection being the plaintiff), the court converted this matter to a legal – not an equitable – breach of contract action, as to which a plenary jury trial was also requested by The Collection. However, the counterclaim for breach of contract infused *no new issue into the case* other than whether the claim was covered. There was not even an issue as to the amount of damages to be awarded in the event the court found coverage.[2]

Accordingly, the only issue was for the court to decree whether there was coverage, as requested initially in Intrepid's declaratory judgment action. There was never any determination that the policy was ambiguous. The only issue, ever, was whether Newcomb had intended to steal the cars when he issued the down-payment checks. That simply fact question – and that question alone – could have properly resolved by the jury. This action should not have been converted to a legal action with a plenary jury trial in which the court left it to the jury to

---

[2] The only potential damage issue would be whether The Collection was entitled to recover the money spent in attempting to mitigate its damages, essentially in litigating with the Valley Bank in federal district court in Virginia. But, even here, the only issue was whether such damages were within the coverage. If so, the amount being sought would necessarily take the total amount claimed by the Collection to a number that was in excess of the defendant's policy limits. Thus, The only issue was whether these "mitigation expenses" were within the coverage. Again, there was no damage issue left for the jury to decide.

construe the contract.  When the court permitted the realignment of the parties on The

Collection's motion, Intrepid objected to The Collection's request for a jury trial.[3]

The only thing that court could have appropriately been put to *an advisory jury* was the

sole factual issue as to whether Newcomb intended to steal the cars when he wrote the checks

used for the down payments -- without any adverse inference instruction  But that is far from

what happened.  The court put a broad question to the jury as to whether Intrepid breached the

contract, and, much worse, the court even sent this issue back to the jury with an instruction that

contained the common law rule of construction know as *contra preferendum – i.e.*, that if they

found the contract to be ambiguous, it should be construed against the insurer.   This was

certainly wrong since the interpretation is for the court – even the interpretation of an

ambiguity.   The only issue ever was whether Newcomb meant to steal the cars from The

---

[3]  The defendant's response (DE 13) to The Collection's motion to dismiss and to realign parties (DE 10) stated:

> While there may have been some logic, pre-*Higgins*, to abating or staying a declaratory judgment action while factual issues are resolved by a jury in related tort litigation, such is not even the case here.  There is no underlying or related litigation.  The parties simply have a present dispute as to the interpretation of the subject policy with respect to a set of facts pleaded in the complaint.   This is a proper declaratory judgment action.

Nonetheless, the Court granted The Collection's motion to dismiss Intrepid's declaratory judgment action, finding that the claims were subsumed within The Collection's counterclaim for breach of contract.  (DE 18).  Intrepid's answer to The Collection's counter-claim for breach of contract contained the following response the plaintiff's jury demand:

### RESPONSE TO JURY DEMAND

> This case presents a proper declaratory judgment action, as argued in the plaintiff's [Intrepid' s] contemporaneously filed Memorandum in Opposition to the Defendant's Motion to Dismiss.  It calls upon the court to fashion an equitable decree.  The only appropriate way for a jury to be involved is if the court were to empanel an advisory jury to resolve any factual issues embedded within the main coverage issue. The filing of a counterclaim does not change this where, as here, the action is initially brought as a proper declaratory judgment action.

Collection.

The court's final instructions to the jury – *see* DE 138 – gave an instruction entitled "Breach of Insurance Policy" which read, in relevant part, as follows:

> The provisions of an insurance policy should be construed as any other type of contract. The entire contract should be reviewed to ensure the proper interpretation of any single provision of the policy. The parties to an insurance contract are free to allocate responsibility for certain risks and an insurer may provide coverage for some risks and exclude others.
>
> The rights and responsibilities insurer and the insured are set out in the policy as well as any of the policy's declarations, modifications or endorsements. If you find that the language of policy is plain and unambiguous, its terms must be implemented in accordance to the plain and ordinary meaning of policy's language. However, if you find that the language at issue is not plain and clear, and rather it is ambiguous and you can be subject to more than one -- or that can be subject to more than one interpretation, then you must interpret the policy liberally in favor of The Collection and against Intrepid Insurance.
>
> If you find that one interpretation of the policy results in coverage and another reasonable interpretation of the policy results in exclusion, you must adopt the interpretation of the policy that affords Collection coverage for its losses. This is because the law in Florida requires that an ambiguous insurance policy be strictly construed against the insurer and in favor of the insured, here, The Collection. Where the phrasing of the policy is so confusing that an average person cannot make out the boundaries of the policy, then the policy is ambiguous and must be construed in favor of its purpose.

The defendant, Intrepid, objected to this instruction and submitted one that carefully tracked the exact language of the relevant portion of the subject insurance policy. *See* Intrepid's submitted instruction at DE 86, pp. 16-7.  However, if the court were to give any instruction at all as to construing an ambiguous contract against the drafter, there is a standard instruction on that matter, which reads as follows:

- 10 -

416.20 INTERPRETATION — CONSTRUCTION AGAINST DRAFTER

You must first attempt to determine the meaning of the ambiguous term(s) in the contract from the evidence presented and the previous instructions. If you cannot do so, only then should you consider which party drafted the disputed term(s) in the contract and then construe the language against that party.

*See In re Std. Jury Instructions-Contract & Bus. Cases*, 116 So. 3d 284, 318 (Fla. 2013).

However, the Jury Instruction Committee opined – "strongly" – that this is only to be given to the jury when the trial judge has declared a particular provision to be ambiguous, which of course, did not happen here.

The Committee strongly recommends the use of this instruction in connection with a verdict form that clarifies, by special interrogatory, what the term or phrase is that the court has declared to be ambiguous. *See First Nat'l Bank of Lake Park v. Gay*, 694 So.2d 784, 789 (Fla. 4th DCA 1997) (discussing that interrogatory verdict forms should track the same issues and defenses in the jury instructions).

*In re Std. Jury Instructions-Contract & Bus. Cases*, *supra*, 116 So. 3d at 318-19.

Additionally, it must be pointed out that giving the jury a general instruction on breach of contract and then also giving the jury the instruction on contract interpretation mixes two different concepts and invokes different standards, thus requiring reversal. *Veliz v. Am. Hosp.*, 414 So. 2d 226 (Fla. Dist. Ct. App. 1982).

If this case were to be tried to a jury at all, the only question put to the jury, in a simple interrogatory form of verdict, should have been whether Newcomb had criminal intent to steal the subject vehicles as plainly required by the relevant terms of the policy.  No instruction beyond the actual wording of the policy (as submitted by defendant) should have been given, and surely no instruction regarding how the jury should interpret the policy – let alone construing it

- 11 -

as against the drafter – should have been given.   This was error that certainly would have prejudiced the defendant, especially when coupled with the adverse inference instruction as to Newcomb's testimony, to the point that the defendant was deprived of a fair trial, and is entitled to a new trial.

Respectfully submitted,

By:   **/s/ Michael B. Buckley, Esq.**
**Thomas Gary Gorday, Esq.**
**Michael B. Buckley, Esq.**
BUCKLEY LAW GROUP, P.A.
150 Second Avenue North,
Suite 1200
St. Petersburg, Florida 33701
Telephone: (727) 822-4800
Facsimile:  (727) 490-3101
mbuckley@buckleylawgroup.com
ggorday@buckleylawgroup.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via electronic notice by the CM/ECF system, this 25th day of November, 2014, on all counsel or parties of record on the Service List below.

_____s/   Thomas Gary Gorday, Esq.___

## SERVICE LIST

| | |
|---|---|
| **Evan R. Marks, Esq.**<br>MARKS & WEST, P.A.<br>100 Southeast 2nd Street, Suite 2700<br>Miami, Florida 33131<br>Telephone:  (305) 374-0210<br>Facsimile:  (305) 374-4089<br>**Primary:**emarks@marksandwest.com<br>**Secondary:** mvalladares@marksandwest.com<br><br>*Counsel for The Collection, LLC* | **Paul J. Schwiep**, **Esq.**<br>COFFEY &#124; BURLINGTON<br>2601 South Bayshore Drive, Penthouse<br>Miami, Florida 33133<br>O.  305-858-2900<br>M.  305-495-3833<br>www.coffeyburlington.com<br><br>*Counsel for The Collection, LLC* |